IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED  STATES  OF AMERICA, | ) |
| | ) |
| | ) |
| -vs- | ) |
| | Criminal No. 05-218 |
| MARCEL RAYNARD FARRISH, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

and

## ORDER OF COURT

## FINDINGS OF FACT

1.  On March 27, 2004, at approximately 10:25 P.M., Pittsburgh police officers, Novakowski, Snyder and Fallert, were on patrol in the Homewood section of Pittsburgh, in an unmarked police vehicle.  Snyder was in the front passenger sear, Novakowski was driving and Fallert was in the back seat.

2.  At that time, when Fallert and Snyder first observed Defendant's vehicle, a Cougar, they believed it was  illegally parked on the left side of a road, behind a "no parking" sign and that it was a hazard.  When the officers approached the vehicle, they testified that the car was running and occupied only by the Defendant. Although two witnesses and Defendant testified that Defendant was not illegally parked, I reject their testimony and accept the testimony of Officers Fallert and Snyder that the Cougar was parked and/or stopped behind the sign.  William

Cargile's testimony was unconvincing in that he remembered the incident in question as an afternoon event.  Likewise, Darlene Wall testified that the incident occurred when it was just beginning to get dark –  a time long before 10:25 P.M. in March.  This occurred in an area well-known for drug trafficking.  Also, the vehicle was parked and/or stopped in a hazardous position, which could have prevented emergency vehicles from passing through the street.

3.  The officers stopped their vehicle behind the right passenger side of the Cougar and saw Defendant seated behind the wheel.

4.  Officer Fallert exited the police car and walked to the driver side of the Cougar  with the intent to ask the driver/Defendant to move along.   Fallert saw Defendant put an object into his mouth with his right hand.  Defendant began to chew rapidly.

5.  Recognizing that this incident was occurring in a high drug trafficking area and  suspecting the destruction of contraband, Officer Fallert identified himself to Defendant as a police officer and asked Defendant what he had put in his mouth.

6.  As the officer testified, Defendant swallowed and stated it was merely a baggie of marijuana.  Defendant's testimony that he had nothing in his mouth, but that the officers nevertheless asked him what was in his mouth and to open his mouth is not credible.

7.  The officer asked Defendant to open his mouth; Defendant complied; and the officer observed green leafy matter on Defendant's tongue and teeth, which appeared to be marijuana.

8. Defendant was arrested for possession of a controlled substance and asked to exit the Cougar because he had tampered with evidence – the marijuana.

9. When Defendant was outside the Cougar, Officer Novakowski asked Defendant for identification. Defendant responded that he had none and that his operator's license had been suspended. When questioned about the reason for the suspension, Defendant stated that it was for driving while intoxicated. The officers confirmed this at the scene.

10. Because the Cougar was illegally parked and/or stopped and because Defendant was under arrest, the officers called for a tow service. Defendant told the officers his girlfriend owned the car.

11. Prior to the Cougar being towed, the officers searched the Cougar pursuant to a written inventory policy, which is performed to document items (and their condition) in the vehicle, including the vehicle's trunk.

12. During the inventory search, among other items, a firearm, ammunition and crack cocaine were recovered from the trunk. These items are the subjects of the counts in the Indictment.

## CONCLUSIONS OF LAW

1. After observing Defendant illegally parked and/or stopped and concluding that it presented a hazard to potential street traffic, the police officers did not detain Defendant's vehicle and were clearly permitted to exit their vehicle to tell Defendant to move along. That action required neither reasonable suspicion nor probable cause.

2.  As Officer Fallert approached Defendant and observed Defendant stuff something into his mouth and begin to chew rapidly, in this area known for high drug trafficking activity, Fallert reasonably suspected that Defendant was attempting to destroy contraband.

3.  That reasonable suspicion gave the officers a duty to investigate further by asking Defendant to open his mouth, wherein the officers observed a green, leafy substance which Defendant admitted was marijuana.

4.  Defendant's admission and the officers' observations constituted probable cause to arrest Defendant for possession of a controlled substance.

5.  The Cougar had to be towed because it was illegally and hazardously parked and/or stopped, Defendant had no operator's license and no one else was present to drive it.

6.  The officers lawfully searched Defendant's person and the Cougar pursuant to a written inventory policy and pursuant to Defendant's arrest.

7.  Defendant's claim that there were items in the vehicle not listed in the inventory does not violate Defendant's Fourth Amendment rights.

8.  The officers did not violate the Fourth Amendment in their search of the Cougar.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED  STATES  OF AMERICA, | ) |
| | ) |
| | ) |
| -vs- | ) |
| | ) Criminal No. 05-218 |
| MARCEL RAYNARD FARRISH, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **11th**, day of September, 2006, after careful consideration and for the reasons set forth above, it is ORDERED that the Defendant's Motion to Suppress (Docket No. 37) is Denied.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge